Joe Angelo (Bar # 268542)
jangelo@gajplaw.com
Gale, Angelo, & Johnson, P.C.
2999 Douglas Blvd., Ste. 111
Roseville, CA 95661
916-290-7778 ph
916-282-0771 fax

Attorney for Debtor
Yolanda Wafer Narcisse

UNITED STATES BANKRUPTCY COURT

CENTRAL DISCTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In Re:<br><br>YOLANDA WAFER NARCISSE,<br><br>Debtor. | Case No.: 2:22-16299-NB<br><br>Chapter 7<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR'S MOTION FOR CONTEMPT FOR VIOLATION OF THE DISCHARGE INJUNCTION**<br><br>Date: July 30, 2024<br>Time: 11:00am<br>Judge: Hon. Bason<br>Crtrm: 1545<br>Location: 255 E. Temple St.<br> Los Angeles, CA 90012 |

Yolanda Wafer Narcisse (hereinafter "Debtor"), by and through her attorney of record, Joe Angelo, hereby submits to this Court her Memorandum of Points and Authorities in Support of her Motion for an Order holding Navy Federal Credit Union (hereinafter "NFCU") in contempt for violation of the discharge injunction, pursuant to 11 U.S.C. §§105 and 524.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Debtor moves this Court for an Order of Contempt against NFCU, and this attached Memorandum shall be made a part of said Motion to substantiate the required elements under FRBP 9020 and 9014 governing Contested Matters.

//

//

//

## JURISDICTION

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a). Venue is proper under 28 U.S.C. §1408(a). This Motion is brought pursuant to *Barrientos v. Wells Fargo Bank, N.A.*, 663 F.3d 1186, 1189-91 (9th Cir. 2011).

## INTRODUCTION

This action arises from the willful and intentional violations of the discharge injunction committed by NFCU. NFCU engaged a third party (Silverman Theologou, LLP – hereinafter "Silverman") to continue improper collection efforts after entry of Debtor's chapter 7 discharge. This Motion is brought to address the ongoing and continuing harassment and collection efforts, including attempts to obtain a judgment against Debtor, against Debtor while the discharge injunction was in effect. NFCU and Silverman had, and continues to have, actual knowledge that Debtor filed for chapter 7 bankruptcy protection and subsequently received a chapter 7 bankruptcy discharge. The actions taken by NFCU and Silverman were taken with the specific purpose to collect on a debt subject to the protection of the discharge injunction.

NFCU, including in actions taken by its counsel, engaged in a scheme to continue to try and extract payment from the Debtor despite the protections afforded to the Debtor pursuant to the discharge injunction. NFCU and Silverman knew that it has no legal right to collect on the purported debt yet has sought to collect the debt directly from Debtor by commencing a collections lawsuit seeking a money judgment against Debtor despite the account being discharged.

The actions of NFCU and Silverman were done with the specific intention to harm Debtor, force the Debtor to make a payment on the account, and prevent Debtor from her ability to enjoy the provisions of the fresh start that flowed from the discharge of her chapter 7 bankruptcy. Debtor has suffered, and will continue to suffer, from actual harm based specifically on the collection activity of NFCU and Silverman.

## FACTUAL HISTORY

**I.    History of the Case**

Debtor filed a voluntary Chapter 7 bankruptcy petition in this Court on November 16, 2022 (DN 1). As part of Debtor's Chapter 7 Filing, she listed a debt owed to NFCU, an account ending

in 2808, with an approximate balance of $8,400.00 on Schedule F (DN 1, Pg. 25). Notice of Debtor's filing for chapter 7 bankruptcy was sent to NFCU via electronic transmission on November 18, 2022[1] (DN 7, Pg. 2).

Debtor successfully completed her chapter 7 and her discharge was entered on February 27, 2023 (DN 11). Notice of the Debtor's discharge was sent to NFCU via electronic transmission on March 1, 2023 (DN 13, Pg. 2). The Order of Discharge entered in this case specifically advises creditors that the order means "creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors," and that "[c]reditors who violate this order can be required to pay debtors damages and attorney's fees," (DN. 11, Pg. 1).

After completion of her chapter 7 and subsequent entry of discharge, Debtor believed that her financial issues were finally resolved. NFCU and Silverman, however, shattered that peace beginning in November of 2023. First, an attorney's office claiming to represent NCFU called Debtor in mid-November 2023 claiming that NCFU would be filing or had already filed a collections lawsuit against Debtor. Immensely concerned by this call, Debtor contacted her bankruptcy attorney's office and the office of the undersigned seeking clarification and guidance as to the threats made by NFCU and Silverman.

To her horror, over Thanksgiving Day weekend NFCU and Silverman served a copy of a complaint and summons seeking to collect NFCU's pre-petition debt directly from Debtor (the "Lawsuit"). Debtor is the only named defendant in the Lawsuit and is very clearly the individual whom NFCU intended to sue and the account which is the subject of the Lawsuit is undeniably the account which was listed in Debtor's bankruptcy schedules. The Lawsuit, which is attached as Exhibit A to the Declaration of Yolanda Wafer Narcisse, seeks to collect $8,379.53 from Debtor and includes an account statement showing that the last four digits of the account are 2808 (Ex. A, Pg. 9). The very first paragraph of the summons issued with the Lawsuit warned Debtor that she had only "30 calendar days… to file a written response," that the filing of a response would cause her to incur a fee, but that if she did respond within the 30 day window, "you may lose the case by

---

[1] / It appears that NFCU subscribed to the Electronic Data Interchange to receive bankruptcy notices. https://bankruptcynotices.uscourts.gov/edi_faq.

1   default, and your wages, money, and property may be taken without further warning." Exhibit B
2   to the Declaration of Yolanda Wafer Narcisse. In a panic, on November 27, 2023 Debtor again
3   contacted her bankruptcy attorney and the office of the undersigned, seeking guidance as to
4   whether her bankruptcy discharge was valid and whether she would be forced to pay back the
5   nearly five-figure debt that she believed had been discharged in her bankruptcy case.

6         NFCU and Silverman's ongoing collection activity and intentional misrepresentations have
7   caused the Debtor to experience significant emotional stress and anxiety. She believed that her
8   pre-bankruptcy issues with NFCU were finally resolved when her chapter 7 discharge was entered.
9   After completion of her chapter 7 bankruptcy the Debtor began to move on from the financial
10  issues that caused her to file for chapter 7 bankruptcy protection. NFCU's post-discharge conduct
11  and collection demands have ruined Debtor's ability to fully enjoy her fresh start.

12  **II.    NFCU and Silverman's Intentional Violations**

13        Despite having notice of Debtor's bankruptcy filing and discharge, NFCU, through
14  Silverman, continued collection efforts against the Debtor. Instead of simply updating the account
15  to note the chapter 7 bankruptcy filing and subsequent discharge, NFCU appears to have flagged
16  the account as one that was ripe for collection and affirmatively acted on its position. NFCU went
17  as far as to hire counsel who then, with knowledge of the bankruptcy discharge, filed a lawsuit on
18  NFCU's behalf seeking to collect the full pre-petition balance against Debtor.

19        Silverman either knew that the NFCU account at issue had been discharged in Debtor's
20  bankruptcy, failed to conduct a PACER search to determine whether Debtor had filed a bankruptcy
21  or was part of an active bankruptcy proceeding, or otherwise performed no due diligence regarding
22  the status of the NFCU account before filing the frivolous lawsuit. As they received electronic
23  notice directly from the bankruptcy court, NFCU was aware that the Debtor filed for chapter 7
24  bankruptcy protection as they continued their collection efforts. Similarly, NFCU also possessed
25  actual knowledge that the Debtor received her chapter 7 discharge. NFCU appears to have engaged
26  in a plan to defraud or otherwise attempt to collect on a debt it knew it had no legal right to receive
27  payment on and was simply trying to bully the Debtor into making some type of payments to avoid
28  the threat of wage garnishment or account levies.

Instead of simply updating its files and moving on, NFCU ignored Debtor's chapter 7 bankruptcy protections and continued to attempt to collect payment from the Debtor. NFCU was actively attempting to collect on Debtor's account. NFCU and Silverman's post-discharge conduct can only be described as egregious and intentional and done with the sole purpose of exacting a payment from the Debtor. Not only did it file the collections lawsuit in an improper venue, but it selected one hundreds of miles away with the intention of pressuring the Debtor into paying or otherwise settling the discharged debt rather than incurring the costs and taking the time away from family to appear to defend herself.

## LEGAL POINTS AND AUTHORITIES

### I. The Discharge Injunction

The filing of a voluntary Chapter 7 bankruptcy petition initiates an "order for relief" that affords the Debtor an opportunity for a discharge under that chapter. 11 U.S.C. §301(b) (2009).

To give the discharge teeth, the order also gives rise to a permanent discharge injunction under section 524. *Ackerman v. Eber* (*In re Eber*), 687 F.3d 1123, 1125 (9th Cir. 2012). The permanent discharge injunction voids any judgment, bars the commencement of an action, and prohibits any act to collect, recover, or offset as a personal liability of the Debtor. 11 U.S.C. § 524(a)(1)-(3) (2009); *McGhan v. Rutz* (*In re McGhan*), 288 F.3d 1172, 1176 (9th Cir. 2002).

The entry of a discharge order provides for a broad injunction and requires creditors like NFCU to take affirmative steps to ensure Debtors receive a fresh start. 4 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* § 524.02[2] (16th ed. 2012).

### II. Legal Standard for Contempt

To prove a willful violation of the discharge injunction, the Debtor must show that NFCU: "(1) knew of the discharge injunction and (2) intended the actions which violated the discharge injunction." *ZiLOG, Inc. v. Corning* (*In re ZiLOG, Inc.*), 450 F.3d 996, 1007 (9th Cir. 2006).

Whether or not NFCU actually intended to violate 11 U.S.C. § 524 is not determinative so long as it had prior notice of the discharge order. *In re Campion,* 294 B.R. 313 (9th Cir. BAP 2003). "We perceive no difference as a practical matter between a computer program that does

not perform tasks accurately and a clerical employee who does not perform tasks accurately. In either event, the employer bears the risk of the consequences." *Id.* at 315 (BAP 9th Cir. 2003).

The contents of the discharge order are unambiguous and fixed by statute. *See, e.g., In re Moncur*, 328 B.R. 183, 191 (9th Cir. BAP 2005). The discharge is automatic and self-effectuating. NFCU must obey it. *Pavelich v. McCormick, Barstow, Sheppard, Wayte, & Carruth LLP (In re Pavelich)*, 229 B.R. 777, 781-82 (9th Cir. BAP 1999).

The Supreme Court recently held that an objective standard for determining contempt applies to all actions brought under the Bankruptcy Code. *Taggart v. Lorenzen*, 587 U.S. 554, 139 S. Ct. 1795 (2019). In *Taggart* the Supreme Court explained that a bankruptcy "court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." *Id.*, 587 U.S. 554, 565, 139 S. Ct. 1804.

Once the Debtor makes an adequate showing as to these two elements, he or she may recover compensatory damages, sanctions, and reasonable attorney's fees. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1193 (9th Cir. 2003).

### III. Remedies under 11 U.S.C. §105

11 U.S.C. §105 empowers bankruptcy courts to award debtors compensatory civil contempt remedies for violations of the discharge injunction. These remedies include an order of contempt, attorney's fees and costs, and sanctions. *See, e.g., Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1193 (9th Cir. 2003); *Walls v. Wells Fargo Bank,* 276 F.3d 502, 507 (9th Cir. 2002).

The Ninth Circuit has allowed emotional distress damages for automatic stay violations when the Debtor "(1) suffer[s] significant harm, (2) clearly establish[es] the significant harm, and (3) demonstrate[s] a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." *Snowden v. Check Into Cash of Wash. Inc. (In re Snowden)*, 769 F. 3d 651, 657 (9th Cir. 2014). See also *Dawson v. Washington Mutual Bank (In re Dawson)*, 390 F.3d 1139, 1148

(9th Cir. 2004). The same rule and analysis apply to violations of the discharge injunction. *In re Nordlund*, 494 B.R. 507, 523 (Bankr. E.D. Cal. 2011).

"By limiting the availability of actual damages under § 362(h) to individuals, Congress signaled its special interest in redressing harms that are unique to human beings. One such harm is emotional distress, which can be suffered by individuals but not organizations." *Dawson*, 390 F.3d at 1146. "Another purpose is to create a breathing spell, a phrase suggesting a human side to the bankruptcy process." *Id*. 390 F.3d at 1147 citing *United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1491 (9th Cir. 1993).

Understanding the human side of filing bankruptcy, and citing to the House Committee notes the Court reasoned it was "convinced that Congress was concerned not only with financial loss, but also…with the emotional and psychological toll that a violation of a stay can exact from an individual." *Dawson*, 390 F.3d at 1148.

## **ARGUMENT**

### I.    NFCU and Silverman Are In Contempt

This Court should hold NFCU and Silverman in civil contempt because the elements of civil contempt are met, as: (1) NFCU and Silverman were aware of Debtor's chapter 7 bankruptcy filing and discharge, (2) the terms of the discharge injunction are unambiguous and fixed by statute, and (3) NFCU and Silverman intentionally ignored the discharge injunction's prohibition against collection.

NFCU is a sophisticated creditor and is well aware of the protections afforded by the discharge injunction under the bankruptcy code. However, instead of abiding by those protections and updating its records to remove the Debtor, or at least flag the account as a discharged account, NFCU and Silverman continued to attempt to collect on the debt post-discharge.

NFCU received various notices from the Bankruptcy Notification Center regarding the Debtor's chapter 7 filing and subsequent entry of the discharge order. NFCU subscribed to the BNC's EDI notification system, which provided for immediate notification regarding significant bankruptcy events (such as the notice of filing and entry of discharge).

Here the NFCU and Silverman did not merely contact Debtor seeking payment of its claim, but instead employed counsel, called the Debtor, initiated a collections lawsuit seeking to collect its claim, along with interest, fees, and costs, and served a copy of the complaint and summons upon Debtor requiring Debtor to respond in short order or risk loss of property and money without notice. NFCU possessed actual knowledge that its debt was included and discharged in bankruptcy yet ignored the significance of the bankruptcy stay and discharge to continue to try and collect on the account.

## II. Debtor Should be Awarded Compensatory Damages, Attorneys' Fees, Costs, and Sanctions

Debtor should be awarded compensatory damages for economic loss, actual damages, and emotional harm; reimbursement of her reasonable attorney's fees and costs necessary to prosecute this matter; and, further, this Court should sanction NFCU and Silverman to deter further collection efforts. To date Debtor has incurred nearly $5,200 in legal fees related specifically to addressing the post-discharge collection issues, including legal research and preparing the instant motion and related documents, as well as engaging with NFCU and Silverman regarding the improper post-discharge collection efforts.

Debtor's counsel anticipates that if NFCU and/or Silverman opposes the motion an additional $3,500 in legal fees will likely be incurred in replying to any opposition, plus additional time preparing for and attending the hearing on the motion. Debtor requests an award of $25,000 in compensatory damages in addition to fees/costs. Debtor further requests that she be awarded fees and costs associated with the instant Motion and related work done in order to address NFCU and Silverman's blatant violations of the discharge injunction. NFCU received multiple notices regarding the Debtor's bankruptcy filing subsequent bankruptcy discharge.

## CONCLUSION

For the reasons stated above, Debtor respectfully requests the Court enter a scheduling order at the July 30, 2024 hearing to allow for the Debtor to obtain additional information from NFCU regarding her account so that a trial/evidentiary hearing may be set to fully present evidence regarding NFCU's improper conduct. At the final hearing the Debtor will prove liability and

damages and justify sanctions as well as an award of attorney's fees and costs incurred in connection with bringing and prosecuting this action.

                                            **Gale, Angelo, & Johnson, P.C.**

Dated: June 26, 2024               By:    */s/ Joe Angelo*
                                                      Joe Angelo
                                                      Attorney for Debtor