Joe Angelo (Bar # 268542)
jangelo@gajplaw.com
Gale, Angelo, & Johnson, P.C.
2999 Douglas Blvd., Ste. 111
Roseville, CA 95661
916-290-7778 ph
916-282-0771 fax

Attorney for Debtor
Yolanda Narcisse

UNITED STATES BANKRUPTCY COURT

CENTRAL DISCTRICT OF CALIFORNIA – LOS ANGELES

| | |
|---|---|
| In Re:<br><br>Yolanda Narcisse<br><br>Debtor. | Case No.: 2:22-16299-NB<br><br>Chapter 7<br><br>**DEBTOR'S REPLY IN SUPPORT OF DEBTOR'S MOTION FOR CONTEMPT FOR VIOLATION OF THE DISCHARGE INJUNCTION**<br><br>Date:       July 30, 2024<br>Time:      11:00am<br>Judge:     Hon. Neil Bason<br>Crtrm:     1545<br>Location: 255 E. Temple St.<br>                Los Angeles, CA 90012 |

Yolanda Narcisse (hereinafter "Debtor"), by and through her attorney of record, Joe Angelo, hereby submits to this Court his Reply to Navy Federal Credit Union's (hereinafter "NFCU" or "Creditor") opposition to Debtor's motion for contempt regarding NFCU's violation of the discharge injunction, pursuant to 11 U.S.C. §§105 and 524.

## **INTRODUCTION**

At the outset the Debtor notes that NFCU's opposition was not timely filed. Pursuant to Local Bankruptcy Rule 9013-1, any opposition to the motion was due fourteen (14) days prior to the hearing. That deadline was bolded in the Notice of Motion that was served on NFCU. However, NFCU failed to timely file its opposition by July 16, 2024, and instead elected to file it on July 18, 2024. LBR 9013-1 provides that any untimely filed opposition may be a waiver of a right to oppose the relief requested in the Debtor's motion.

Should the Court elect to consider NFCU's untimely opposition to Debtor's Motion for Contempt, NFCU's opposition ignores its own records and actions regarding its collection efforts that were undertaking in direct violation of the discharge injunction. The facts of this case are relatively straightforward. Here, NFCU was notified of Debtor's chapter 7 bankruptcy filing and bankruptcy discharge[1] yet it knowingly caused a lawsuit to be filed against the Debtor nearly a year after the initial chapter 7 filing. NFCU's purpose regarding the filing of the state collection lawsuit was to continue to collect on a Debt that was properly discharged in Debtor's chapter 7 bankruptcy proceeding. NFCU, despite being well aware that it was not in a legal position to properly collect from Debtor, continued its collection efforts, filed false statements in the Placer County State Court, and otherwise intentionally pursued Debtor for payment of the discharged debt. to send payment demands and other requests that Debtor make a payment to NFCU. Now NFCU believes it is the victim because its attorney failed to engage in any due diligence before making false representations to the Superior Court and otherwise independently performing a simple bankruptcy search prior to filing a complaint against Debtor.

The Debtor's instant Reply will not rehash the facts outlined and detailed in her June 27, 2024 filing (Entry No. 19) and incorporates those allegations into this Reply.

## REPLY

**1. NFCU's Clear Violation of the Discharge Injunction**

The untimely opposition attempts to hide behind the argument that NFCU's counsel's lack of notice somehow absolves NFCU from intentionally violating the discharge injunction. There is no dispute that NFCU received notice of Debtor's bankruptcy filing (Entry Nos. 7 and 13) as NFCU's agreement with the Bankruptcy Notification Center's ("BNC") Electronic Data Interchange ("EDI") provides electronic notice of all bankruptcy filings where it is listed as a creditor or noticed as a party. (See - https://bankruptcynotices.uscourts.gov/, last visited on July 22, 2024).

---

[1] / NFCU's counsel appears to assume that the undersigned was Debtor's initial bankruptcy counsel. That is incorrect and NFCU's counsel was notified of that fact in 2022. Further, that assertion has absolutely no relevance to the issues raised in Debtor's motion.

Presumably NFCU signed up for electronic notification to take advantage of the BNC's faster noticing services and to avoid delays that may be caused by otherwise receiving bankruptcy information through first class mail.  (See - https://bankruptcynotices.uscourts.gov/edi-faq, last visited on July 22, 2024).  NFCU received notice of Debtor's bankruptcy filing through the EDI on November 18, 2022 (Entry No. 7).  NFCU received notice of Debtor's bankruptcy discharge through the EDI on February 28, 2023 (Entry No. 13).  Further, NFCU's late filed opposition does not actually dispute that NFCU failed to receive notice of both the bankruptcy filing or discharge. Rather, NFCU's counsel argues that *it* was not provided with notice. Although it is unclear as to how that representation absolves NFCU of any liability as NFCU authorized the filing and service of the post-discharge collection lawsuit against Debtor nearly a year after the filing of Debtor's chapter 7 case.

Unlike a creditor seeking to enforce its *in rem* rights with respect to a security interest, NFCU's actions regarding the filing of the collections lawsuit against the Debtor after entry of her discharge involve the ongoing collection efforts of an unsecured debt (see Entry No. 1, Pg. 25; Entry No. 20, Exhibit A)[2].  The only purpose of the post-discharge lawsuit filed by NFCU against the Debtor was to seek a judgment so that NFCU could continue its collection efforts on the unsecured loan.  Indeed, NFCU's Complaint specifically prays for a judgment awarding damages of at least $8,379.53, attorney's fees, and related court costs.  (See Entry No. 20, Exhibit A). NFCU's complaint was not seeking permission to foreclose against any property or otherwise act on a security interest – its purpose for filing the complaint against the Debtor was to collect on a pre-petition debt and otherwise pressure the Debtor into making payments on that account (or enforcing a judgment against the Debtor's wages and/or bank account.)

The Debtor's motion for contempt provides clear evidence of NFCU's various discharge injunction violations.  "The discharge prohibits not just litigation, but also informal collection activities, such as dunning notices and telephone calls." *Ocwen Loan Servicing v. Marino (In re Marino)*, 577 B.R. 772, 783 (9th Cir. BAP 2017).  NFCU was aware and had actual knowledge of

---

[2] / *Johnson v. Home State Bank*, 501 U.S. 78 (1991) explains that a discharge extinguishes the debtor's personal liability on an obligation but does not prohibit a creditor from enforcing its right to foreclose on a mortgage. *Id.,* at 83.  In the instant case there is no question that the underlying debt at issue was unsecured.

DEBTOR'S REPLY IN SUPPORT OF DEBTOR'S MOTION FOR CONTEMPT FOR VIOLATION OF THE DISCHARGE INJUNCTION
-3-

the Debtor's bankruptcy filing and subsequent entry of her bankruptcy discharge. As was recognized in *Marino*, the post-discharge collection activity was either due to a general incompetence of the lender, or deliberately in an "effort to induce confused borrowers to pay discharged debts." *Id.*, at 785. NFCU's "post-discharge collection efforts must be scrutinized under the standard set forth in *Taggart*. 139 S.Ct 1795 (2019)." *Irigoyen v. 1600 West Invs., LLC, (In re Irigoyen)*, 659 B.R. 1, 12 (9th Cir. BAP 2024).

NFCU has not provided any legal authority in its untimely opposition as to why it felt it was appropriate, or otherwise allowed, to file a lawsuit nine months after the Debtor received her discharge and serve her with notice of the lawsuit the day after the Thanksgiving Holiday. Moreover, the untimely response all but concedes that NFCU's counsel failed to conduct even basic due diligence prior to commencing the collection lawsuit. A simple PACER search would have revealed that Debtor had filed for chapter 7 bankruptcy and subsequently received a discharge of the debt at issue.

**2. NFCU Can Be Held In Contempt**

The Debtor's memorandum of points and authorities explained the basis for holding NFCU in contempt and finding that it violated the discharge injunction. Feigned ignorance of the law cannot shield NFCU from liability. NFCU is a sophisticated creditor and presumably is noticed of thousands of bankruptcy filings each month. Common sense would indicate that NFCU is uniquely aware of what it can and cannot do under the bankruptcy code once a discharge order is entered. A discharge "operates as an injunction against the **commencement** or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor…" *Marino*, 577 B.R. at 782 (quoting 11 U.S.C. § 524(a)(2) (emphasis added).

The facts are clear and can be distilled to the following: 1) Debtor filed for bankruptcy; 2) NFCU received notice of the bankruptcy; 3) Debtor received her bankruptcy discharge; 4) NFCU received notice of the bankruptcy discharge; and 5) NFCU continued to attempt to collect on the debt and filed a post-discharge collection lawsuit to obtain a judgment on the pre-petition debt. Debtor's anticipated discovery would provide further insight into NFCU's thoughts and approach

to the debt collection activity at issue as NFCU's notes and internal records regarding Debtor's account would be reviewed.

Debtor satisfies the requirements of *Taggart v. Lorenzen*, 587 U.S. 554, 139 S. Ct. 1795 (2019).  For NFCU to suggest that it misunderstood or was confused about the implications of 11 U.S.C. § 524 and the ability to communicate with its collections attorney does not shield it from liability.  The Debtor is not seeking to hold NFCU's counsel in contempt, as no debt was owed to the collection firm, and while it is apparent that its counsel failed to even perform the most basic due diligence required of collection attorneys, Debtor is not, at this time, pursuing NFCU's counsel for any discharge violation.  NFCU advances no argument or basis that even approaches considering of whether "a fair ground of doubt" existed regarding whether its pre-petition debt was discharged through Debtor's chapter 7 bankruptcy proceeding.

What is apparent is that NFCU intended to sue the Debtor after entry of her discharge, did so in a venue hundreds of miles away from the Debtor's actual residence, and with the intent to pressure her into otherwise paying on the discharged account.  On its face it appears that NFCU knew exactly what it was doing and hoped to pull a fast one on the Debtor and illegally collect on the discharged debt.

## **CONCLUSION**

The Debtor's motion asks that the court set an evidentiary hearing so she can explain her damages and justify the imposition of sanctions against NFCU after additional facts are learned and documents exchanged.  Counsel for Debtor will be prepared to discuss availability and scheduling regarding prosecution of the instant motion on July 30, 2024.

Respectfully submitted,

Dated:  July 23, 2024          **Gale, Angelo, & Johnson, P.C.**

*/s/ Joe Angelo*
Joe Angelo
Counsel for Debtor